IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARRELL LATTISAW,<br>     Plaintiff | * | |
| | * | CIVIL ACTION NO. CCB-15-36 |
| V. | * | |
| DEPARTMENT OF CORRECTIONS,<br>EASTERN CORRECTIONAL<br>     INSTITUTION<br>WARDEN KATHLEEN GREEN,<br>     Defendants | *<br><br>* | |

******

MEMORANDUM

Pending is a Motion to Dismiss, or in the alternative Motion for Summary Judgment, filed on behalf of defendants Department of Corrections, Eastern Correctional Institution, and Warden Kathleen Green. ECF 15. Plaintiff Darrell Lattisaw has responded. ECF 17. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion will be granted.

Background

Lattisaw, who is incarcerated at the Eastern Correctional Institution ("ECI"), filed this self-represented complaint, alleging that in June of 2014 he noticed that the drinking water tasted "funny/strange." ECF 4, p. 3. A day or two later he became ill. *Id*. Lattisaw states that he went to sick call several times and his illness did not improve. *Id*.

On July 4, 2014, Warden Green posted a notice and announced over the intercom that the water was contaminated and not to be ingested. *Id*., pp. 3-4. Lattisaw claims that this notice was not provided until three days after the water had become contaminated. *Id*., p. 4. He alleges that the issue with ECI water is persistent and that he has been denied adequate drinking water and water for showering, threatening his personal safety. *Id*.

1

Lattisaw alleges that Green failed to protect him from harm by exposing him to contaminated water and that the unsanitary conditions of confinement caused thereby threatened his health and safety. *Id*. He seeks compensatory damages and asks that the "water problem [be] corrected." *Id*., p. 3.

Green avers that on July 4, 2014, Assistant Warden Robert Hanke was contacted by Rex Powell, Assistant Regional Supervisor for the Maryland Environmental Service ("MES"), who advised that a water test conducted the previous day came back positive for total coliform bacteria.[1] ECF 15-3, ¶ 4. The water was deemed sufficiently safe for showering and flushing toilets. *Id*. Bottled water was provided to staff and inmates, per recommended protocol, although the notice issued by MES indicated the situation was not an emergency and the water was consumable unless an inmate had a specific health concern. *Id*.; ECF 15-10, pp. 3, 5.

On July 6, 2014, Hanke and Facility Administrator Darryl Webster were notified that a follow-up water test conducted on July 5, 2014, showed no coliform bacteria. ECF 15-3, ¶ 5. Nevertheless, staff continued to distribute bottled water for drinking until a formal notice was issued by MES and received by the institution. *Id*.

On July 7, 2014, formal notification was received from MES confirming that the most recent water test was negative for coliform bacteria. *Id*., ¶ 6. That information was distributed throughout the institution. *Id*. Normal operations regarding water consumption were resumed, including the cessation of the distribution of bottled water. *Id*.

Green avers that MES conducts routine water tests at ECI several times a month and prepares a water quality report annually.[2] *Id*., ¶ 7. Water samples tested in May and June of 2014

---

[1] Two of twelve drinking water samples collected on July 1, 3, and 5, 2014, showed the presence of total coliform bacteria. ECF 15-10, p. 6.

[2] No unsafe levels of contaminants were found in ECI's water in 2013. ECF 15-3, ¶ 3; ECF 15-4.

were within normal limits. ECF 15-5, p. 2; ECF 15-6, p. 2.  As of May 26, 2015, no additional notifications regarding contaminants had been received by ECI.  *Id*., ¶ 7; ECF 15-11; ECF 15-12; ECF 15-23.

Lattisaw has a history of hypertension and is diabetic.  ECF 15-17, pp. 22, 33.  He is regularly noncompliant with his plan of treatment.  *Id*.  Lattisaw was seen in the chronic care clinic on May 29, 2014, due to an injury to his hand suffered while working in the kitchen. *Id*., p. 23.  Lattisaw was next seen on July 2, 2014. *Id*., p. 20-22.  It was again noted that he was non-compliant with his plan of care, including refusing to have his blood drawn. *Id.*, p. 20.  Lattisaw did not complain of feeling ill.  *Id*., pp. 20-22. He was again seen in the chronic care clinic on July 15, 2014.  ECF 15-16, p. 10.  He was treated for a fungal infection, he refused a finger-stick and blood work, and he offered no complaints regarding the water or feeling otherwise ill.  *Id*.

Lattisaw did not submit another sick call slip until December 23, 2014, when he complained of "feeling terribly sick from the parasites and arsinic [sic] in the drinking water. The poison water has had me sick for six or seven months since June 2014."  ECF 15-17, p. 19.  He was evaluated on December 29, 2014, at which time he did not report any symptoms related to his chronic disease and had no questions or concerns relating to health care.  *Id*., p. 17.  It was also noted that he continued to be non-compliant with his medication and lab work.  *Id*.  He consented to submit a urine sample, which was normal except for an elevated glucose reading.  *Id*., p. 18.

On January 8, 2015, Lattisaw was again educated on the necessity of complying with his medical plan.  *Id*., p. 13.  He replied that he did not care and that he was being poisoned by ECI water.  *Id*.  Nurse Charlotte Townley advised Lattisaw that the water was safe and asked if he would like a referral to the psychiatrist, which he declined.  *Id*.

Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Analysis

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials act[ed] with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 297-98. "In other words, the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir.2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

In order to prevail on an Eighth Amendment claim of failure to protect plaintiff must establish that defendant exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997).

      Lattisaw has failed to demonstrate any of the elements of an Eighth Amendment claim. Lattisaw's medical records reveal no injury arising from exposure to contaminated water. At the time of the elevated water testing he reported no symptoms of injury. Moreover, evidence demonstrates that ECI's water is tested regularly and has been found to comply with established safety levels other than the testing in early July of 2014. At that time, the level of coliform was high and the Warden immediately took corrective action by distributing bottled water to staff and inmates. The water was tested again the next day and found to be within normal limits. Based on the record evidence, the court does not find that Green disregarded a known risk of harm to Lattisaw. To the contrary, she took immediate corrective measures to insure the inmates' safety.

## Conclusion

      For the reasons stated, defendants' dispositive motion shall be granted. A separate Order shall be entered in accordance with this Memorandum.


February 10, 2016                                                /S/
Date                                                                      Catherine C. Blake
                                                                                     United States District Judge